## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TYRIAN GRANBERRY, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO.  11-4329 |
| STEVEN T. BYRNE & THE CITY | : | |
| OF CHESTER, | : | |
| | : | |
| Defendants. | : | |

### MEMORANDUM

BUCKWALTER, S. J.                                                                                               October 13, 2011

Currently pending before the Court is a Motion by Plaintiff Tyrian Granberry to Disqualify Counsel for Defendants Steven T. Byrne & the City of Chester (collectively "Defendants").  For the following reasons, the Motion is denied.

**I.    FACTUAL BACKGROUND**

According to the facts set forth in the Complaint, on June 15, 2009, a woman by the name of Nicole Parker became engaged in an argument with another woman named Taniel Paynter. (Compl. ¶ 8.)  A man, believed to be Ms. Paynter's boyfriend, subsequently assaulted Ms. Parker inside her home at 921 Pennell Street, Chester, PA 19103.  (Id. ¶ 5.)  A 911 call was placed as the assault was in progress, and Defendant Officer Stephen T. Byrne responded by going to Ms. Parker's house.  (Id. ¶ 6.)  Ms. Parker did not know Ms. Paynter's boyfriend and, as such, was unable to identify the assailant.  (Id. ¶ 8.)  Officer Byrne interviewed Ms. Paynter, as well as several others who witnessed the events, but no one would or could describe the assailant.  (Id. ¶¶ 10-11.)

On June 23, 2010, Ms. Parker went to the police station to inform Officer Byrne that she believed her attacker to be Plaintiff Tyrian Granberry. (Id. ¶¶ 12-13.) At that point, Officer Byrne showed Ms. Parker a single photograph, which he identified as a picture of Mr. Granberry. (Id. ¶¶ 14-16.) Ms. Parker in turn identified the man in the photograph as Mr. Granberry. (Id. ¶ 17.) Officer Byrne documented this meeting and photo identification in a subsequently-prepared police report. (Id. ¶ 18 & Ex. A.) Based on the identification, Officer Byrne drafted a warrant and affidavit of probable cause for the arrest of Tyrian Granberry. (Id. ¶¶ 19-20 & Ex. B.) Following approval of the warrant by a Magisterial District Judge, Mr. Granberry was arrested at home on July 8, 2009, in view of his children, spouse, and several neighbors. (Id. ¶¶ 21-23.)

Thereafter, at the police station, Mr. Granberry was subjected to a strip search and body cavity inspection. (Id. ¶ 24.) He spent many hours in the custody of the Chester police while his arrest was processed, including several hours handcuffed to a bar rail, prior to being placed in a holding cell. (Id. ¶¶ 25-26.) At approximately 8:00 p.m., Mr. Granberry went before a Magisterial District Judge for a preliminary arraignment. The judge set bail and remanded him to confinement at the Delaware County Prison. (Id. ¶¶ 27-28.) Plaintiff remained in custody for three days and two nights before making bail. (Id. ¶ 29.) During that time, he was forced to submit to a second strip search and body cavity inspection. (Id. ¶ 32.)

A preliminary hearing for Mr. Granberry was held on July 14, 2009, at which time the charges against him were dropped. (Id. ¶¶ 33-34.) Ms. Parker had purportedly gone to the police station on the day of Plaintiff's arrest to inform police that Mr. Granberry was not actually the assailant. (Id. ¶ 36.) When the police refused to listen, she came to the preliminary hearing to expressly recant her identification. (Id. ¶¶ 35-36.) Plaintiff speculates that because Mr.

Granberry's spouse's first name is Teneal — pronounced the same as the "Taniel" with whom Ms. Parker argued before being assaulted — and because Ms. Parker heard on the street that "Teneal's" significant other was Tyrian Granberry, she wrongfully assumed that Mr. Granberry was her assailant.  (Id. ¶ 37.)

On July 13, 2011, Plaintiff initiated the present litigation alleging a violation of his constitutional rights under 42 U.S.C. § 1983 against both Officer Byrne and the City of Chester Police Department.  The Defendants, jointly represented by Attorney Robert P. DiDomenicis, filed their Answer and Affirmative Defenses on August 10, 2011.  Thereafter, on August 25, 2011, Plaintiff brought the present Motion to Disqualify Defendants' Counsel for Conflict of Interest.  Defendants responded on September 9, 2011, making this Motion ripe for the Court's consideration.

## II.     STANDARD FOR A MOTION TO DISQUALIFY COUNSEL

"Federal courts have inherent authority to supervise the conduct of attorneys appearing before them." Henry v. Del. River Joint Toll Bridge Comm'n, No. Civ.A.00-6415, 2001 WL 1003224, at *1 (E.D. Pa. Aug. 24, 2001).  To guide such supervision, the United States District Court for the Eastern District of Pennsylvania has adopted the Pennsylvania Rules of Professional Conduct.  See E.D. Pa. Civ. R. 83.6, Part IV(B).  These Rules allow for disqualification of counsel as one of a court's available tools.  Henry, 2001 WL 1003224, at *1.  "Counsel may be disqualified if the Court determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule, given the ends that the disciplinary rule is designed to serve." Id. (quoting United States v. Miller, 624 F.2d 1198, 1201 (3d Cir. 1980)).

Even if a court finds that counsel violated the Pennsylvania Rules of Professional Conduct, however, disqualification is not mandatory. Jordan v. Phila. Hous. Auth., 337 F. Supp. 2d 666, 672 (E.D. Pa. 2004). Rather, it "is a matter committed to the sound discretion of the district court." Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990). "To disqualify opposing counsel, the moving party must clearly show that continued representation would be impermissible." Reg'l Emp'rs Assur. Leagues Voluntary Emps.' Beneficiary Ass'n ex rel. PennMont Beneficiary Servs., Inc v. Castellano, No. Civ.A.03-6903, 2005 WL 856928, at *2 (E.D. Pa. Apr. 12, 2005) (citing Cohen v. Oasin, 844 F. Supp. 1065, 1067 (E.D. Pa. 1994)). "Disqualification is a harsh measure . . . generally disfavored by the court," and, as such, the court maintains an obligation to prevent its tactical use by the opposing party. Id. (citing Commonwealth Ins. Co. v. Graphix Hot Line, Inc., 808 F. Supp. 1200, 1203 (E.D. Pa. 1992)). When determining whether disqualification is appropriate, a court must also consider "countervailing policies, such as permitting a litigant to retain his chosen counsel and permitting attorneys to practice without excessive restrictions." Henry, 2001 WL 1003224, at *1. Although doubts regarding the existence of an ethical rule violation should be construed in favor of disqualification, the party seeking such an order bears the ultimate burden of showing that the representation is impermissible. James v. Teleflex, Inc., No. Civ.A.97-1206, 1999 WL 98559, at *3 (E.D. Pa. Feb. 24, 1999).

## III. DISCUSSION

The current Motion before the Court seeks to preclude Attorney DiDomenicis from providing representation to both Defendants. Specifically, Plaintiff notes that Pennsylvania Rule

of Professional Conduct 1.7(a)[1] prohibits joint representation where the representation of one client will be either directly adverse to another client or materially limited by the lawyer's responsibilities to another client. He goes on to argue that Pennsylvania law requires a government agency to indemnify an employee for judgments resulting from acts within the employee's scope of employment. In § 1983 cases brought against both the agency and the employee, this law creates a conflict of interest: on one hand, the government agency bears an interest in asserting that the employee's conduct was in defiance of policy; on the other hand, the employee maintains an interest in asserting that his conduct was aligned with normal agency practices. Because, as Plaintiff contends, the interests of a municipality and its employee as defendants in a § 1983 action are irreconcilably at odds, Mr. DiDomenicis cannot possibly represent both Defendant Officer Byrne and Defendant City of Chester in the present action.

As support for this argument, Plaintiff relies solely on the case of Dunton v. Cnty. of Suffolk, 729 F.2d 903, 907, amended on other grounds, 748 F.2d 69 (2d Cir. 1984). That matter involved a § 1983 action against a county and a county police officer who had physically assaulted

---

[1] Pennsylvania Rule of Professional Conduct 1.7(a) states:

> Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> > (1) the representation of one client will be directly adverse to another client; or
> >
> > (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

Pa. R. Prof Conduct 1.7(a).

a man whom the officer had found in a car with the officer's wife. Id. at 905. The county attorney represented both the county and the officer. Id. at 906. At trial, the attorney argued that the officer's actions were those of a man acting as a husband, not as an officer, and thus outside the scope of his employment. Id. Following a jury verdict against him, the defendant officer appealed on the grounds of improper representation. Id. The United States Court of Appeals for the Second Circuit found that "the interests of a municipality and its employee as defendants in a section 1983 action are in conflict." Id. at 907. It went on to explain that,

> A municipality may avoid liability by showing that the employee was not acting within the scope of his official duties, because his unofficial actions would not be pursuant to municipal policy. The employee, by contrast, may partially or completely avoid liability by showing that he was acting within the scope of his official duties. If he can show that his actions were pursuant to an official policy, he can at least shift part of his liability to the municipality. If he is successful in asserting a good faith immunity defense, the municipality may be wholly liable because it cannot assert the good faith immunity of its employees as a defense to a section 1983 action.

Id. (citation omitted). Ultimately, the Second Circuit concluded that the county attorney had created an impermissible conflict of interest by making arguments directly contrary to the officer's interests, i.e. that the officer "was not acting under color of state law but rather as an 'irate husband.'" Id.

Several factors, however, render this case inapplicable to the present litigation. Primarily, aside from the fact that Dunton is not binding law in the Third Circuit, the opinion itself expressly disavowed creation of a per se rule mandating disqualification in cases of joint representation of a municipality and its employee in § 1983 actions. Id. at 908 n.4. Since then, the Second Circuit has expressly limited Dunton to its facts and employed "a case-by-case determination" to resolve allegations of conflict in § 1983 cases. Patterson v. Balsamico, 440 F.3d 104, 114 (2d Cir. 2006).

To that end, it has declined to disturb jury verdicts against municipal employees in § 1983 cases where the employee was jointly represented with the municipality, absent some showing of a sufficiently serious and actual conflict of interest.  See, e.g., Patterson, 440 F.3d at 114; Moskowitz v. Coscette, 51 Fed. Appx. 37, 38-39 (2d Cir. 2002); Leather v. Ten Eyck, 2 Fed. Appx. 145, 148 (2d Cir. 2001); Rodick v. City of Schenectady, 1 F.3d 1341, 1350 (2d Cir. 1993). Similarly, District Courts within the Second Circuit have narrowly applied Dunton's holding to "require disqualification of counsel representing both an individual officer and the municipal employer in Section 1983 cases only where counsel acts in a way that is *actually* against the officer's interests."  Lieberman v. City of Rochester, 681 F. Supp. 2d 418, 424-25 (W.D.N.Y. 2010) (citing Coggins v. Cnty. of Nassau, 615 F. Supp. 2d 11, 33 (E.D.N.Y. 2009) (declining to disqualify county attorney because the county's and employee's interests were aligned as a result of county's determination that employee "acted within the proper discharge of [his] duties and within the scope of [his] employment" and thus "any judgment against [the employee] will effectively be one against the [c]ounty"); Weintraub v. Bd. of Educ. of the City Sch. Dist. of N.Y., No. Civ.A.00-4384, 2001 WL 984933, *2-3 (E.D.N.Y. July 17, 2001) (refusing to disqualify counsel, but choosing to advise employee of possible conflict in view of corporation counsel's inconsistent statements concerning whether it had conclusively determined that defendant had been acting within the scope of his employment)).  "In other words, a potential conflict is insufficient to warrant disqualification; rather, the employee must show that an actual conflict exists."  Lieberman, 681 F. Supp. 2d at 425.

Moreover, while the Third Circuit has yet to address this particular issue, other Circuits have declined to automatically find a conflict when a governmental entity and one of its employees

7

are represented jointly in a § 1983 action. For example, in <u>Coleman v. Smith</u>, 814 F.2d 1142 (7th Cir. 1987), the United States Court of Appeals for the Seventh Circuit eschewed any such per se rule, noting that the <u>Dunton</u> holding had to be contained to its facts. <u>Id.</u> at 1148. Likewise, in <u>Chavez v. New Mexico</u>, 397 F.3d 826, 840 (10th Cir. 2005), the Tenth Circuit, facing a § 1983 action against a government agency and its employees, expressed "[a] degree of skepticism . . . when one party seeks disqualification of opposing counsel based on allegedly deficient representation of the opposing party." <u>Id.</u> at 840. In that matter, the court declined to find that disqualification of joint defense counsel was necessary absent clear evidence of a conflict or that the defendants' attorney took any action to benefit the state at the expense of the individual defendants. <u>Id.</u>

Finally, as a matter of policy, the joint defense of individual officers/actors and their employing governmental agencies in § 1983 actions remains a common and accepted practice within the Third Circuit. <u>See</u>, <u>e.g.</u>, <u>Bowser v. Borough of Birdsboro</u>, No. Civ.A.11-598, 2011 WL 4479596 (E.D. Pa. Sept. 27, 2011) (accepting without question, in § 1983 case, joint representation of police officer, sued in his individual and official capacities, and employing borough, sued under a <u>Monell</u> theory of liability); <u>White v. Brommer</u>, No. Civ.A.09-4353, 2011 WL 3625020 (E.D. Pa. Aug. 17, 2011) (same); <u>Quagliarello v. Dewees</u>, __ F. Supp. 2d __, 2011 WL 2937396 (E.D. Pa. July 20, 2011) (same); <u>see also</u> <u>Brown v. City of Phila.</u>, No. Civ.A.07-192, 2008 WL 269495 (E.D. Pa. Jan. 29, 2008) (Buckwalter, S.J.); <u>Eldridge v. Diehl</u>, No. Civ.A.10-3537, 2011 WL 323111 (E.D. Pa. Feb. 1, 2011) (Buckwalter, S.J.); <u>Marvel v. Del. Cnty.</u>, No. Civ. A.07-5054, 2009 WL 1544928 (E.D. Pa. June 2, 2009) (Buckwalter, S.J.). To now require that governmental entities and their individual employees obtain separate counsel in all such cases would unnecessarily

complicate the litigation process at the unwarranted expense of taxpayers.

As noted above, Plaintiff, in this case, advances a vigorous argument in support of a *potential* conflict of interest between the City of Chester and Officer Byrne based on Pennsylvania's required indemnification of judgments against officers acting under color of state law and within the scope of their duties.[2] Plaintiff neglects to recognize, however, that no *actual* conflict has manifested itself under the particular facts of this case. Indeed, at no point in its Answer or Affirmative Defenses does the City express any intent to escape potential indemnification obligations to Officer Byrne by asserting that his actions either were outside the scope of his employment or constituted a crime, fraud, actual malice, or willful misconduct.[3] Quite to the contrary, the Answer actually assumes that Officer Byrne was acting within the course of his duties and asserts that Plaintiff's detention and/or arrest was based on probable cause.

---

[2] Under Pennsylvania law,

> When an action is brought against an employee of a local agency for damages on account of an injury to a person or property, and he has given timely prior written notice to the agency, and it is judicially determined that the act of the employee caused the injury and such act was, or that the employee in good faith reasonably believed that such act was, within the scope of his office or duties, the local agency shall indemnify the employee for the payment of any judgment of the suit.

42 PA. CONS. STAT. § 8548(a).

[3] Although the City has denied the existence of a policy, custom, or practice that bears any causal nexus to Plaintiff's injuries, (Ans., Seventh Affirmative Defense), such a denial does not, as Plaintiff presupposes, attempt to "lay blame for the use of an unduly suggestive photo identification solely on Officer Byrne." (Pl.'s Mot. to Disqualify 9.) Rather, it simply seeks to undermine Plaintiff's Monell theory of liability, which requires that, to hold the City separately liable independent of Officer Byrne's actions, the plaintiff must identify either a "policy, statement, ordinance regulation or decision officially adopted and promulgated by that body's officers," or "constitutional deprivations visited pursuant to governmental 'custom.'" Monell v. Dept. of Soc. Serv., 436 U.S. 658, 690-91 (1978).

(Answer, Second Affirmative Defense.)  Accordingly, at this juncture, the legal positions of both Defendants are completely aligned and any possibility of inconsistent defenses coming into play is, at best, hypothetical.  Absent a showing that Attorney DiDomenicis intends to advance an argument contrary to Officer Byrne's interests, no basis exists for disqualification.

To the extent Plaintiff's Motion alternatively attempts to advocate in support of Officer Byrne's right to choose his own individual attorney, the Court finds this argument both unconvincing and unavailing.  Specifically, Plaintiff asserts that:

> Normally, a party's interest in representation by the lawyer of his own choosing militates against disqualification, but in this case it does not appear Officer Byrne had any choice in his attorney.  State law gives the right to the City of Chester to cho[o]se counsel for Officer Byrne.  42 Pa.C.S. § 8547.  The City should have chosen an attorney who could provide Officer Byrne with his undivided loyalty, but the City decided instead to assign its own attorney to his case.  Officer Byrne deserves the representation of an attorney whose loyalties are not compromised, especially if that lawyer is chosen by a third party.

(Pl.'s Mot. to Disqualify 10-11.)

Assuming without deciding that Plaintiff has standing to bring this argument, § 8547 does not deprive Officer Byrne of his right to choose an attorney.  To the contrary, it provides that where a plaintiff alleges that an employee committed a wrongful act within the scope of his employment, the local agency or municipality has a mandatory obligation, *"upon written request by the employee,"* to defend the employee in that action.  42 PA. CONS. STAT. § 8547 (emphasis added).[4]  Under the statute's plain language, the City of Chester could not have, as Plaintiff

---

[4] This statute states, in full, that "[w]hen an action is brought against an employee of a local agency for damages on account of an injury to a person or property, and it is alleged that the act of the employee which gave rise to the claim was within the scope of the office or duties of the employee, the local agency shall, upon the written request of the employee, defend the action,

incorrectly presumes, forcibly imposed counsel upon Officer Byrne.  Moreover, and perhaps more importantly, Officer Byrne, by affidavit, has unequivocally indicated his consent to joint representation notwithstanding any potential conflict, as follows:

> I have been provided with a copy of a Motion for Disqualification of Mr. DiDomenicis that has been filed by Plaintiff's counsel.  I have been advised by Mr. DiDomenicis that he is of the belief that there is no actual conflict of interest.
>
> Based upon my knowledge of the matter, my privileged discussions with Mr. DiDomenicis, and my review of Plaintiff's Motion, I do not believe that there is a conflict of interest for Mr. DiDomenicis to represent the City of Chester and me.
>
> I am aware, however, that there are circumstances where a potential conflict of interest may arise and, if such a conflict arises, it could have adverse [e]ffects on the City of Chester and/or myself.
>
> With said knowledge and understanding that such a potential conflict could arise, I hereby give my informed consent for Mr. DiDomenicis to continue to represent both the City of Chester and me in this matter.

(Defs.' Resp. to Mot. to Disqualify, Ex. 3, Aff. of Officer Steven Byrne.)  Such an affidavit, without any contrary proof of an actual conflict, advocates against disturbing Officer Byrne's choice of counsel.[5]

---

unless or until there is a judicial determination that such act was not within the scope of the office or duties of the employee." Id.

[5] Pennsylvania Rule of Professional Conduct 1.7(b) allows waiver of a conflict of interest under the following circumstances:

> Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
> > (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

The law is clear that "'[t]he party seeking disqualification of opposing counsel bears the burden of clearly showing that continued representation would be impermissible. Vague and unsupported allegations are not sufficient to meet this standard.'" Ramos v. Quien, No. Civ.A.08-2952, 2011 WL 2453614, at *5 (E.D. Pa. June 20, 2011) (quoting Cohen v. Oasin, 844 F. Supp. 1065, 1067 (E.D. Pa. 1994)). Despite this burden, Plaintiff has come forward with nothing more than speculative assertions of a potential but unlikely conflict and disingenuous efforts to champion the right of Defendant Officer Byrne. Given this Court's skepticism about the motivation behind Plaintiff's Motion and the fact that disqualification is generally disfavored, the Court declines, on the face of the present record, to impose such a harsh sanction. Therefore, Plaintiff's Motion to Disqualify is denied.

---

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent.

Pa. R. Prof. Conduct 1.7(b).